UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GUADALUPE DELAROSA, JR.** | : | **DOCKET NO. 2:18-cv-00186** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **PACKAGING CORPORATION OF AMERICA, ET AL** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court are a Motion to Remand [doc. 9] and a Motion to Amend Complaint [doc. 15] filed by plaintiff Guadalupe Delarosa, Jr. Defendant, Packaging Corporation of America ("PCA"), opposes the motion to remand [doc. 14] and the motion to amend. Doc. 18.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the Motion to Remand [doc. 9] and Motion to Amend [doc. 15] be **DENIED** and that all claims brought against Timothy Wohlers be **DISMISSED WITHOUT PREJUDICE**.

### I.
#### BACKGROUND

This case arises from the injuries Delarosa suffered when he was doing welding work for his employer, Elite Specialty Welding, LLC ("Elite"), on February 8, 2017, at a paper mill owned by PCA in DeRidder, Louisiana. Doc. 1, att. 7, pp. 2, 14–17. Delarosa and other welders were injured when a Foul Condensate tank ("FC tank") exploded at the facility. *Id.* Delarosa, a Louisiana

resident, filed suit in the 36th Judicial District Court, Beauregard Parish, Louisiana, on January 16, 2018. *Id.* at p. 2. He named as defendants PCA, a corporation with citizenship in Delaware and Illinois, and Timothy Wohlers, a Louisiana citizen whom he alleges was a supervisor with responsibility for the safe operation of the FC tank. *Id.* at p. 7.

According to Delarosa's petition, Elite contracted with PCA to conduct repairs at the mill during its annual maintenance outage, which included welding various pieces of equipment, or "hot work." *Id.* at p. 14. Delarosa states that the FC tank stored highly flammable non-condensable gases (hereafter "NCGs"), a byproduct of mill operations. *Id.* at pp. 7, 9. He maintains that PCA issued a permit for hot work to be done near the FC tank without providing any warning that it contained NCGs. *Id.* at p. 16. He says that the FC tank exploded "suddenly and without warning" when hot work began nearby, causing him serious injury. *Id.* at p. 17.

On February 14, 2018, PCA removed the action to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. Although it acknowledges that diversity would be lacking because Delarosa and Wohlers are both Louisiana citizens, PCA asserts that the citizenship of Wohlers should be disregarded for purposes of determining jurisdiction because he was improperly joined. *Id.* at pp. 2, 6.

Delarosa filed the instant motion to remand on March 13, 2018, asserting that he stated a valid cause of action against Wohlers. Doc. 9, p. 2. On April 3, 2018, Delarosa moved the court for leave to file an amended complaint, seeking to add claims against James Machine Works, LLC ("JMW"). Doc. 15. PCA opposes the motion on grounds that plaintiff improperly pleaded JMW's citizenship and that amendment would be futile. Doc. 18, pp. 8, 10.

## II.
## LAW & ANALYSIS

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

### A. Motion to Remand

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Only the latter method is relevant here, because no fraud is alleged. Thus the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The movant is therefore required to put forth evidence "that would negate a possibility of liability on the part of [the nondiverse defendant]." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 767 (5th Cir. 2016) (quoting *Travis*, 326 F.3d at 650) (alterations in original). All contested issues of substantive fact and ambiguities in the controlling

state law must be resolved in the plaintiff's favor. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

In order to assess the plaintiff's possibility of recovery against the non-diverse defendant, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 574. This inquiry "depends upon and is tied to the factual fit between the [plaintiff's] allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 574.

In some cases, however, the analysis should advance past the standards of Rule 12(b)(6). *Id.* at 573. This is appropriate where the plaintiff "has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The summary inquiry is only appropriate "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant," and should not proceed into a resolution of the merits. *Id.* at 573–74. On a summary inquiry into improper joinder, the court must still resolve all ambiguities in the plaintiff's favor. *Travis*, 326 F.3d at 648–49.

In this diversity case, the court applies state law to evaluate the sufficiency of the plaintiff's claims. *Henry v. O'Charleys, Inc.*, 861 F.Supp.2d 767, 771 (W.D. La. 2012). Under Louisiana tort law, an employee is personally liable to a third person if the employee breached a personal duty owed to that person. *Freeman v. Wal-Mart Stores, Inc.*, 775 F.Supp. 208, 210 (W.D. La. 1991). Courts look to the factors set forth by the Louisiana Supreme Court in *Canter v. Koehring Co.*,

283 So.2d 716 (La. 1973), to determine if there is a basis for an employee's personal liability. *Id.* Under *Canter*, four factors must be satisfied before personal liability can be imposed:

> (1) The employer must owe a duty of care to the third person, the breach of which caused the damages for which recovery is sought.
>
> (2) The duty was delegated by the employer to the particular employee.
>
> (3) The employee breached the duty through his own personal fault.
>
> (4) Personal liability cannot be imposed simply because of general administrative responsibilities; instead it must result from a personal duty to the plaintiff that was not properly delegated to another employee.

*Canter*, 283 So.2d at 721 (*superseded by statute on other grounds as stated in Walls v. Am. Optical Corp.*, 740 So.2d 1262, 1265 (La. 1999)). Because the existence of a valid claim against Wohlers depends on certain discrete and undisputed facts included in the parties' exhibits but omitted from the complaint, we exercise our discretion to pierce the pleadings in this matter.

Delarosa maintains that he set forth a valid claim because Wohlers was responsible for purging the FC tank but decided not to have it emptied. Doc. 9, att. 2, pp. 9–10 (citing doc. 1, att. 7, ¶¶ 101, 103.) He argues that Wohlers was at the mill on the day of the explosion and allowed hot work to be done near the FC tank without warning the welders of any possible hazard, even though he knew that it had not been purged and an explosion was likely. *Id.* (citing doc. 1, att. 7, ¶¶ 97, 100, 102, 104). In support, Delarosa attaches the declaration of Stephanie Partridge, who says that at the time of the incident she was an assistant superintendent working for Wohlers. Doc. 9, att. 3, pp. 1–2. She states that Wohlers had "the duty to maintain, operate and ensure the safety of the tank that exploded." *Id.* at p. 2. Partridge states that Wohlers admitted to her after the explosion that he made the "ultimate decision not to drain and clean the tank" because the tank "was not due to be cleaned" and the cleaning was prohibitively expensive. *Id.*

PCA opposes remand, alleging that Delarosa cannot show a possibility of recovery against Wohlers. Doc. 14, p. 6. It asserts that plaintiff's allegations are conclusory and devoid of factual

support. *Id.* at p. 16. Attached to PCA's memorandum in opposition to remand is a declaration made by Wohlers in which he denies many of the allegations in the complaint. Doc. 14, att. 1.

The parties contest the second, third, and fourth *Canter* elements. Concerning the second element, PCA contends that plaintiff failed to make any factual allegations that Wohlers was ever delegated any personal responsibility over the FC tank. Doc. 14, p. 16. In his declaration, Wohlers likewise refutes the claim that any personal duty was ever delegated to him. Doc. 14, att. 1, ¶ 5(A)–(C). However, Partridge testifies that "Wohlers was the Superintendent with the duty to maintain, operate and ensure safety of the tank that exploded." Doc. 9, att. 3, p. 2. Partridge's declaration flatly contradicts Wohlers's statement. Resolving all contested issues of fact in plaintiff's favor, we find it plausible that Wohlers had been delegated a duty over the FC tank. Thus, plaintiff satisfies the second *Canter* factor.

As to the third factor, PCA argues that Wohlers did not breach his duty because he was unaware that there was any hazardous condition. According to his declaration, Wohlers was not at the mill at the time of the explosion and did not know that any hot work was scheduled near the FC tank on that day. Doc. 14, att. 1, pp. 1, 3–4, 16. He further states that he had no prior knowledge that the FC tank was likely to explode. *Id.* at p. 16. Partridge's declaration does not refute these statements. *See* doc. 9, att. 3.

Delarosa contends that Wohlers breached his duty regardless of whether he was at the mill when the explosion occurred because he knew that the FC tank should have been purged prior to performing hot work nearby. Doc. 17, p. 2. To this end he relies on a report prepared by the U.S. Chemical Safety and Hazard Investigation Board following a previous explosion at another PCA facility. *Id.* at p. 3 (citing doc. 1, att. 7, ¶¶ 81, 87, 92). In the report, the Board provided safety guidelines concerning welding around flammable materials. *Id.* As cited in the complaint, these

guidelines generally warn about conducting effective gas monitoring and keeping safeguards in place for hot work done in the facility. They are not enough to overcome Wohlers's representations that he was unaware of the work scheduled on February 8, 2017, when he was not even at the facility, or to show that there was any other indication within his awareness that the tank should have been drained and cleaned prior to the explosion when, as he states in his own declaration, it was not scheduled for cleaning. Accordingly, Delarosa cannot satisfy the third *Canter* factor with respect to Wohlers.

Because plaintiff has not sufficiently alleged that Wohlers breached any personal duty, we need not address the final *Canter* factor. PCA has thus met its burden of proving that plaintiff cannot state a plausible claim against Wohlers individually, and so Wohlers should be dismissed from the suit as improperly joined.

### B. Motion to Amend

On April 3, 2018, Delarosa moved the court for leave to file an amended complaint through which he seeks to add James Machine Works, LLC ("JMW") as a defendant. Doc. 15, p. 2. He asserts that JMW, "a Louisiana limited liability company," manufactured or sold the FC tank that exploded and did so "without sufficient safety features to prevent explosion" and/or "negligently manufactured" the FC tank. *Id.* at 2–3. PCA opposes the motion on grounds that plaintiff improperly alleged JMW's citizenship and that amendment would be futile. Doc. 18, pp. 8, 10.

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Leave to amend is within the trial court's discretion but should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this guidance by no means renders leave to amend automatic. *Fin. Acquisition Partners LP v.*

*Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Post-removal amendments that would destroy diversity are subjected to closer scrutiny than ordinary amendments. *Parish Disposal Indus., LLC v. BFI Water Svcs., LLC*, 2014 WL 2207870, at *4 (W.D. La. May 27, 2014) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)).

The citizenship of an LLC is defined through the citizenship of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Plaintiff provides that JMW is a "Louisiana LLC" but does not indicate the citizenship of its members. Assuming *arguendo* that it would qualify as a Louisiana citizen under *Grey Wolf*, we proceed to analyze the motion as one which would defeat federal jurisdiction.

Under *Hensgens*, the court should consider the following factors when confronted with an amended pleading that would destroy diversity in a removed case: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in seeking amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. 833 F.2d at 1182.

**1. Extent to which purpose of amendment is to defeat diversity**

Under the first factor, courts consider both the timing of the proposed amendment and the validity of the claims. *Gallegos v. Safeco Ins. Co. of Indiana*, 2009 WL 4730570, at *3–*4 (S.D. Tex. Dec. 7, 2009). A plaintiff's request to add a nondiverse defendant shortly after removal may be viewed as evidence of his intent to defeat federal diversity jurisdiction. *Id.* at *4. On the other hand, the plaintiff's ability to state a valid claim against the nondiverse defendant is evidence that the principal purpose of his amendment is not to achieve remand. *Id.* Under the first *Hensgens* factor, the inquiry into the validity of the claim is more lenient than that triggered by a 12(b)(6) motion to dismiss. *Agyei v. Endurance Power Prods., Inc.*, 198 F.Supp.3d 764, 772 (S.D. Tex.

2016). The inquiry under *Hensgens* focuses on whether the claim is "facially valid;" in other words, "valid as a matter of law." *Id.* at 771; *see Mallery v. Becker*, 2014 WL 60327, at *2 (W.D. La. Jan. 7, 2014).

Here PCA maintains that the sole purpose of plaintiff's proposed amendment is to defeat diversity. It points first to the timing of the motion, and we note that the motion for leave to amend was filed on April 3, 2018, two and a half months after the suit was initiated in state court and three weeks after PCA filed its motion to remand. *See* doc. 1, att. 7; doc. 9; doc. 15. PCA also argues that plaintiff fails to state a claim on which relief can be granted against JMW and instead only provides "formulaic recitations of the elements of a cause of action under the Louisiana Products Liability Act in a presumed attempt to destroy diversity." Doc. 18, p. 14.

Plaintiff excuses the delay by maintaining that it must add JMW as a result of the third party fault defenses raised by PCA in its answer and affirmative defenses, which were filed twenty days before the motion for leave to amend. Doc. 25, p. 2; *see* doc. 11. PCA's insufficient pleading contention is likewise unavailing. While plaintiff's use of cursory and formulaic allegations about JMW's liability for the design and/or manufacture of the FC tank might be insufficient under Rule 12(b) or 12(e) standards, this deficiency fails to show that the claims asserted face any significant legal obstacles. Accordingly, this factor weighs in favor of permitting amendment.

### 2. Whether plaintiff was dilatory in seeking amendment

As noted above, a short length of time passed between filing of the suit in state court in January 2018, removal of the suit in February 2018, filing of PCA's answer and affirmative defenses in March 2018, and plaintiff's motion for leave to amend filed April 3, 2018. Even if we rejected Delarosa's explanation that he only learned of the need to look for other potentially liable parties through PCA's answer and affirmative defenses, the time that has passed between initiation

of this suit and Delarosa first seeking leave to amend is too brief for the court to find that he has been dilatory.

### 3. Extent to which Delarosa will be prejudiced if denied amendment

The court next considers the extent to which Delarosa will be injured if amendment is not allowed. Delarosa maintains that he will be prejudiced because PCA will be able to point to an "empty chair," JMW, in order to deflect liability at trial. Doc. 25, p. 4. PCA asserts that there is no prejudice because the proposed claims against JMW are perempted under state law. Doc. 18, pp. 16–21.

PCA provides a declaration from one of its directors, Bruce Kummerfeldt. Kummerfeldt states that JMW was a contractor for PCA's predecessor, Boise Packaging & Newsprint. Doc. 18, att. 1, p. 1. He recalls that JMW constructed the FC tank in 2000, and that Boise accepted and took possession of the tank in January 2001. *Id.* He also states that the FC tank was permanently attached to the mill, and was incorporated in and became an integral part of the mill. *Id.* at 2. Attachments to his declaration show that the tank measured 24 by 30 feet. *Id.* at 5.

Under the third *Hensgens* factor, courts have looked to (1) whether the already-named defendant would be able to satisfy a future judgment, and (2) the possibility of parallel state court proceedings. *Agyei*, 198 F.Supp.3d at 777. Courts have also used this factor to weigh the merits of the proposed claims, noting that "a plaintiff will not be 'significantly injured' by the denial of a clearly meritless claim." *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010) (quoting *Hensgens*, 833 F.2d at 1182). A finding that the proposed claims are perempted under state law supports denial of leave to amend under the third *Hensgens* factor, even where the court does not find that the sole purpose of amendment is to defeat diversity or that the plaintiff was dilatory. *See id.* at 367–68, 372–73. The court is not limited to the allegations in the proposed

amended complaint and may instead conduct a summary inquiry on the issue, akin to that permitted under *Smallwood*. *See id.* at 372–73 (upholding district court's allowance of limited discovery, where "discrete and undisputed facts" omitted from the complaint might show that the plaintiff could not recover against the in-state defendant). Accordingly, we first look to PCA's allegation of peremption and consider this issue dispositive.

> Under Louisiana law, peremption refers to
>
>> a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. Unlike the doctrine of prescription . . . peremption may not be renounced, interrupted, or suspended.

*Id.* at 369 (citing La. C.C. art. 3461) (cleaned up). Per Louisiana Revised Statute § 9:2772, as it existed at the time the FC tank was installed,[1] a seven-year peremptive period applies to actions "against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovable, or improvements to immovable property."

Delarosa maintains that § 9:2772 cannot protect JMW from suit, because it is "simply . . . the manufacturer of a movable: the tank that exploded." Doc. 25, pp. 9–10. PCA contends that the Kummerfeldt declaration shows that JMW is entitled to § 9:2772's shield because it shows that the FC tank was either an immovable, an improvement to an immovable, or a component part of an immovable.

As the Fifth Circuit recently emphasized, neither § 9:2772 nor the Louisiana Civil Code defines what is an "improvement" to immovable property. *Wilson*, 602 F.3d at 370–71. A

---

[1] In *Wilson v. Martco Ltd. Partnership*, 2008 WL 11393109, *3–*4 (W.D. La. Jul. 17, 2008), this court determined that it was appropriate to apply the version of the statute that existed when the allegedly defective improvement was installed instead of the version that existed when the accident occurred. Delarosa does not challenge PCA's representation that the version of the statute amended in 2000 is the appropriate one to apply in this case, based on Boise taking possession of the tank in January 2001. *See* doc. 18, p. 17.

component part of immovable property, on the other hand, has long been defined under Article 466 of the Louisiana Civil Code to include things attached to a building to such a degree "that they cannot be removed without substantial damage to themselves" or the building to which they are attached. Under Louisiana law, component parts of immovable property are treated as immovables themselves. *See, e.g.*, *Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales and Use Tax Comm'n*, 903 So.2d 1071, 1078 (La. 2005). As the Fifth Circuit noted:

> Nothing in the plain language of 9:2772 requires that the item itself be an immovable, either in and of itself or by virtue of being a component part of an immovable; rather, the plain language of the statute requires only that the item be an "improvement to immovable property." If the Louisiana Legislature had intended for the statute to apply so narrowly, *i.e.,* only to immovables and their component parts, the Legislature easily could have used the phrase "component parts of immovables" rather than "improvements to immovable property." Importantly, it did not. It is significant, then, that although the Louisiana Civil Code and its ancillary statutes make numerous references to "component parts," 9:2772 includes no such reference.

*Wilson*, 602 F.3d at 370–71. It went on to hold, under a definition of "improvement" drawn from various sources, that the relevant question in determining whether an addition to immovable property was an improvement was merely whether it was "permanently attached" to the immovable. *Id.* at 371–73. Accordingly, it concluded that the ten-ton wood chipper at issue in that case, which had been hardwired into a factory building's electrical system and bolted to that building with steel beams, was an improvement to immovable property and that the maker of that machine was therefore entitled to § 9:2772's limitations period. *Id.*

Here the Kummerfeldt declaration and attachments show – and plaintiff does not refute – that the FC tank was permanently installed in the mill, satisfying the Fifth Circuit's definition for an improvement to immovable property. Accordingly, we need not explore whether the FC tank had also become a component part of the mill based on the evidence provided. Plaintiff's claims

against JMW are thus preempted under state law. Delarosa's assertion that equitable factors favor amendment, because a state court suit against JMW would likely be dismissed for non-joinder of essential parties, is unavailing in light of the preemption finding. The motion for leave to amend must therefore be denied.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Remand [doc. 9] and Motion to Amend [doc. 15] be **DENIED**. It is also recommended that all claims brought against Timothy Wohlers, individually, be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 30th day of August, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE